IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GERARDO FERRAO-RIVERA,

     **Plaintiff,**

             **v.**                   **Civil No.** 24-1079 (FAB)

PUERTO RICO DEPARTMENT OF
EDUCATION, *et als.*,

     **Defendant.**

OPINION AND ORDER

BESOSA, Senior District Judge.

    Plaintiff Gerardo Ferrao-Rivera ("Ferrao" or "plaintiff") brought this employment discrimination action against the Puerto Rico Department of Education (the "DOE") and the Commonwealth of Puerto Rico (collectively, the "defendants"). (Docket No. 1.) Before the Court is defendants' Notice of Injunction and request to stay the case. (Docket No. 22.) Also before the Court are the parties' objections to the Report and Recommendation ("R&R") issued by Magistrate Judge Marcos E. López (the "magistrate judge") (Docket No. 28), concerning defendants' motion to dismiss. (Docket No. 10.) For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the relief requested in defendants' Notice of Injunction. (Docket No. 22.) The Court **ADOPTS IN PART** the R&R and **REJECTS IT IN PART** (Docket No. 28), and **GRANTS IN PART** and **DENIES IN PART** the defendant's motion to dismiss. (Docket No. 10.)

## I.  Background

The following facts are alleged in Ferrao's complaint and are presumed to be true and construed in the light most favorable to him, because he is the non-moving party.  See infra pp. 7-9.

In August 2017, Ferrao was hired as a history and social studies teacher at the Escuela Libre de Música Ernesto Ramos Antonini (the "school") in Hato Rey, Puerto Rico.  (Docket No. 1 at p. 4.)  On March 7, 2022, he received a letter from a DOE complaints investigator informing him that allegations of misconduct had been filed against him.[1]  Id.; Docket No. 17-10. He responded on March 10, asserting that the allegations, which concerned incidents from over two years before, were false, and requesting that the complaints be dismissed as frivolous.[2]  (Docket No. 1 at p. 4; Docket No. 17-12 at p. 1.)  Shortly afterwards, on March 31, 2022, he received a notice of disciplinary action from the administrative complaint investigation unit of the DOE. (Docket No. 1 at p. 4; Docket No. 15-1.)  The notice stated that Ferrao "refused to follow the Substitution Plan" set for the 2019-

---

[1] The complaint says that Ferrao received the letter on March 7, but the letter is dated February 25 and is stamped as "Received" by the DOE Division of Correspondence on March 4.  See Docket No. 17-10 at p. 1.

[2] Neither the letter from the DOE investigator nor Ferrao's response detail what these complaints were about.  Copies of the complaints were purportedly attached to the letter but were not provided as an exhibit to the Court.  See Docket No. 17-10; Docket No. 17-12.

2020 school year, "used bad language in the classroom," and had
"shown films in the classroom that are not suitable for the
students due to their high sexual content." (Docket No. 15-1 at
p. 1.)  The notice also informed him of sworn statements from two
female students expressing concern, discomfort, and fear "because
of how [Ferrao] look[s] at them and how [he] approach[es] them."
Id.[3]

      Several months passed, apparently without further incident.
Then, on August 18, Ferrao submitted an internal complaint to the
school (he does not specify what the complaint was about), and
several days later, on August 24, he was "removed from his work
post" by the school authorities.  (Docket No. 1 at pp. 4, 9.)
Ferrao also became aware of a 2019 incident where the school
principal, Magaly Rosario-Rivera, allegedly sought help from Edgar
Michael La Fontaine-Nieves, a security guard, to make video
recordings of him without his consent.[4]  (Docket No. 17-5.)
According to Mr. La Fontaine, principal Rosario's objective was to
catch incriminating conduct on video that could justify Ferrao's
termination.   Id.   Rosario's apparent disdain for Ferrao is

---

[3] These allegations were not the same as those contained in the first letter.
See Docket No. 17-1 at p. 2.

[4] It is not clear when Ferrao became aware of this incident, but Mr. La Fontaine
Nieves's affidavit is dated October 5, 2022.  See Docket No. 17-5.  It also
appears that Mr. La Fontaine did not work at the school.  See Docket No. 30-1
at p. 2.

corroborated in an affidavit from another teacher, Everling Mercedes Judith Morla-Ríos, who claimed that Rosario had sent her text messages in 2019 reading, "Ferrao's got me pissed me off," "Over my dead body will he return next year," and "He's going to screw up any time now and I'll be waiting for the moment." (Docket No. 17-8.)

On November 2, 2022, Ferrao participated in the "Teacher's Federation Manifestation" protest in front of the school, denouncing the school's "selective prosecution of professors." Id. at p. 4. On December 13, he participated in a protest in front of the DOE building. Id. at p. 5. That same day, he received a second notice of disciplinary action, this time suspending him (with pay). Id.; Docket No. 17-3. In addition to repeating the allegations in the previous notice, the December notice states that Ferrao approached and challenged the two students who submitted complaints against him. (Docket No. 17-3 at p. 3.) The December notice lists his participation in the November 2 and December 13 protests as objectionable conduct, noting that they disrupted classes and made students feel uneasy. Id. at pp. 3-4. The December notice also references an affidavit filed by one of Ferrao's students claiming that he "liked to talk bad about the principal in class and said things about religion that you should

not say, such as, for example, that there was more than one god, in addition to talking bad about churches." Id. at p. 7.

On July 26, 2023, an informal administrative hearing was held concerning the disciplinary charges brought against Ferrao. (Docket No. 17-14.)   He filed a complaint with the EEOC on September 28, 2023, claiming to have been the victim of "selective prosecution," disparate treatment based on his gender, religion, and age, and retaliation for filing complaints and participating in protests against the school.   (Docket No. 10-1.)   The EEOC dismissed his charges on timeliness grounds.   (Docket No. 10-2.) He filed suit before this Court on February 20, 2024.   (Docket No. 1.)   Nine days later, his employment at the school was terminated.   (Docket No. 24 at p. 2.)

Ferrao brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. sections 2000-e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. sections 621, et seq. (the "ADEA"), and Puerto Rico Laws 100 (P.R. Laws Ann. tit. 29, sections 146 et seq.) and 115 (P.R. Laws Ann. tit. 29, sections 194 et seq.)   In his Title VII claim, Ferrao argues that he was subject to employment discrimination due to his gender (male) and religion (atheist), and claims that the DOE retaliated against him for filing complaints and engaging in protests. (Docket No. 1 at pp. 6-8.)   His ADEA claim alleges that the school

discriminated against him due to his age (forty-eight) and replaced him with a new hire who was under forty. Id. at p. 8. His claim under Puerto Rico Law 100 generally repeats his federal law claims of discrimination based on gender, religion, and age, while his claim under Puerto Rico Law 115 aligns with his Title VII retaliation claim. Id. at pp. 9-10. He cites the defendants' maintenance of a hostile work environment, his August 2022 removal from his work post, and his December 2022 suspension as adverse, injurious employment actions. (Docket No. 1 at pp. 4-5.) He seeks reinstatement and money damages for lost wages and emotional distress. Id. at 10-11.

On May 16, 2024, defendants moved to dismiss Ferrao's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") (Docket No. 10.) Ferrao responded on July 1, 2024. (Docket No. 17.) The motion to dismiss was referred to Magistrate Judge Marcos E. López for a report and recommendation. (Docket Nos. 18, 19.) Subsequently, on July 18, 2024, defendants filed the Notice of Injunction. (Docket No. 22.) In the notice, defendants argue that Ferrao's case should be stayed pursuant to the discharge injunction contained in the Order entered pursuant to the Commonwealth of Puerto Rico's Title III petition under the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"). Ferrao responded to the Notice of

Injunction (Docket No. 24), and defendants replied (Docket No. 26.) Because the referral to the magistrate judge only included the motion to dismiss at Docket No. 10, the magistrate judge's R&R acknowledges the Notice of Injunction without providing a recommendation on it. See Docket No. 28 at p. 2, n. 1. With respect to the motion to dismiss, the magistrate judge recommended that Ferrao's gender discrimination claim, retaliation claim, ADEA claim, and Puerto Rico law claims be dismissed, but that his religious discrimination claim be allowed to proceed. (Docket No. 28 at pp. 11-22.)

## II. Standard of Review

### A. A Magistrate Judge's Report and Recommendation

A district court may refer a pending motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b). Any party adversely affected by the report and recommendation may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d); 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F. Supp. 2d 262, 264 (D.P.R. 2010) (Domínguez, J.); Sylva v. Culebra Dive Shop, 389 F. Supp. 2d

189, 191-92 (D.P.R. 2005) (Vélez-Rivé, M.J.) (citing <u>United States
v. Raddatz</u>, 447 U.S. 667, 673 (1980)).

      Failure to comply with this rule precludes further
review. <u>See Davet v. Maccorone</u>, 973 F.2d 22, 30-31 (1st Cir.
1992); <u>Borden v. Secretary of H.H.S.</u>, 836 F.2d 4, 6 (1st Cir.
1987). In conducting its review, a court is free to "accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(a)(b)(1); <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247
(1st Cir. 1985); <u>Álamo Rodríguez v. Pfizer Pharms., Inc.</u>, 286 F.
Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). The Court may
accept those parts of the report and recommendation to which the
parties do not object. <u>See Hernández-Mejías v. General Elec.</u>, 428
F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citing <u>Lacedra v.
Donald W. Wyatt Det. Facility</u>, 334 F. Supp. 2d 114, 125-126 (D.R.I.
2004)).

    **B.  A Motion Filed Pursuant to Fed.R.Civ.P. 12(b)(6)**

      Pursuant to Rule 12(b)(6), a defendant may move to
dismiss an action for failure to state a claim upon which relief
can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). To survive a Rule
12(b)(6) motion, a complaint must contain sufficient factual
matter "to state a claim to relief that is plausible on its face."
<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). A court

must decide whether the complaint alleges facts which "raise a right to relief above the speculative level." <u>Id.</u> at 555. In doing so, a court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 17 (1st Cir. 2011).

> ### C.   The "Notice of Injunction"

Though defendants do not specify what type of motion their "Notice of Injunction" is, because it was filed pre-discovery and seeks to immediately and indefinitely stay Ferrao's claims, the Court will apply the standard of review used to evaluate motions to dismiss under Rule 12(b)(6). Therefore, in reviewing the Notice of Injunction, the Court will "view the facts of the complaint in the light most favorable to [Ferrao], and [] resolve any ambiguities in [his] favor." <u>Ocasio-Hernández</u>, 640 F.3d at 17. For defendants to prevail on the Notice of Injunction, they must show that "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." <u>Ruiz-Sánchez v. Goodyear Tire & Rubber Co.</u>, 717 F.3d 249, 252 (1st Cir. 2013) (internal citation omitted).

## III. Discussion

### A.    The Notice of Injunction

Title III of PROMESA allowed the Commonwealth of Puerto Rico to commence bankruptcy-like proceedings in federal court to restructure its sovereign debt.  See In re Fin. Oversight & Mgmt. Bd., 403 F. Supp. 3d 1, 5 (D.P.R. 2019) (Swain, J.).  As part of these proceedings, the Title III court entered an order which, among other things, enjoined all legal claims against the Commonwealth "that arose, in whole or in part, prior to the Effective Date" of March 15, 2022.  See Case No. 17-3283, Docket No. 19813, Docket No. 19784 at § 92.2 (the "Plan Injunction"). Pursuant to the Plan Injunction, courts in this district have stayed claims for damages and injunctive relief, including for alleged unlawful employment actions, brought against Puerto Rico Commonwealth entities.[5]  See Villalobos-Santana v. P.R. Police Bureau, Civil No. 21-1312, 2024 U.S. Dist. LEXIS 114703, at *9-12 (D.P.R. Jun. 5, 2024) (Delgado-Colón, J.) (claims under Title VII and Puerto Rico laws permanently stayed pursuant to the Plan Injunction); Vélez-Molina v. Rivera-Schatz, Civil No. 20-1565,

---

[5] A case stayed pursuant to the Plan Injunction is closed for statistical purposes and the plaintiff is permanently enjoined from continuing with any of the claims brought, unless and until the Title III court modifies the injunction.  See Villalobos-Santana, 2024 U.S. Dist. LEXIS 114703, at *12; Vélez-Molina, 2023 U.S. Dist. LEXIS 181227, at *11-12.

2023 U.S. Dist. LEXIS 181227, at *2, *8-11 (D.P.R. Sept. 29, 2023)
(López, M.J.) (same).

        Defendants assert that Ferrao's claims fall within the
scope of the Plan Injunction and, like the claims in <u>Villalobos-
Santana</u> and <u>Vélez-Molina</u>, must be stayed.  Ferrao disagrees.
Neither party disputes that the defendants are Commonwealth
entities; instead, their disagreement hinges on whether the claims
"arose, in whole or in part, prior to the Effective Date."  If so,
the claims fall within the scope of the Plan Injunction and must
be stayed.

        "The Title III Plan does not define the term 'arose.'"
<u>Niembro-Concha v. Zequeira-Díaz</u>, Civ. No. 24-cv-1232, 2025 U.S.
Dist. LEXIS 13213, at *5 (D.P.R. Jan. 24, 2025) (Antongiorgi-
Jordán, J.).  Previous opinions in this district look to the range
of time over which the injurious conduct underlying the claim took
place.  Where the alleged unlawful conduct occurred in whole or in
part before the Effective Date, courts have found the claim barred
by the Plan Injunction.  See <u>Villalobos-Santana</u>, 2024 U.S. Dist.
LEXIS 114703, at *3 (claim subject to the Plan Injunction when
"plaintiffs seek compensation and damages for the alleged adverse
employment actions the PRPB took against them from 2018 through
2019"); <u>Vélez-Molina</u>, 2023 U.S. Dist. LEXIS 181227, at *10 (finding
plaintiff's hostile work environment and retaliation claims arose

between 2017 and 2019, the duration of her employment in
defendant's office up to and including her termination).
Conversely, if the injurious conduct underlying the claim occurred
after the Effective Date, the claim is not barred by the Plan
Injunction.  See Niembro-Concha, 2025 U.S. Dist. LEXIS 13213,
at *4-9.

        Ferrao's claims based on the August 2022 removal from
his work post and the December 2022 suspension are not subject to
the Plan Injunction.  Each occurred after the Effective Date, and
"constitute[] separate actionable unlawful employment practice[s]"
without referencing any conduct that occurred prior to the
Effective Date.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.
101, 114 (2002).  The same cannot be said of Ferrao's hostile work
environment claim.  Unlike the August removal from his work post
and his December suspension, which were discrete acts, a hostile
work environment injury may "occur[] over a series of days or
perhaps years and, in direct contrast to discrete acts, a single
act of harassment may not be actionable on its own."  Rae v. Woburn
Pub. Sch., 113 F.4th 86, 102 (1st Cir. 2024) (citing Nat'l R.R.
Passenger Corp., 536 U.S. at 115) (internal quotation marks and
citation omitted).  "[H]ostile work environment claims are
different in kind from discrete acts because their very nature
involves repeated conduct.  Consequently, the existence of a

hostile work environment – as a unique type of adverse employment action – cannot be said to occur on any particular day." __Id.__ at 102 (internal quotation marks and citation omitted).[6]  Ferrao appears to claim that he was subject to a hostile work environment for the duration of his employment at the school, which spanned across the Effective Date.  His evidence includes incidents which occurred before the Effective Date, such as principal Rosario's unauthorized video recording.  Therefore, the hostile work environment claim arose "in part" before the Effective Date and is thus barred by the Plan Injunction.[7]

---

[6] The precedent cited here distinguishing hostile work environment claims from discrete act claims discusses the concept of claim accrual for statute of limitations purposes.  In a key respect, accrual differs conceptually from when a claim "arose" – while the former refers to a specific date (_i.e._, the first date on which a plaintiff could have brought a claim based on the injurious act), the latter refers to a range of time, as indicated in the Plan Injunction's use of the phrase "in whole or in part."  Both, however, generally involve determining the time of origination of a claim, and therefore, the rules of claim accrual are helpful in analyzing when a claim arose.

[7] Ferrao's hostile work environment claim would be dismissed even if it was not barred by the Plan Injunction because he fails to present any evidence that he was aware of or affected by hostile or abusive conduct.  A hostile work environment claim depends on showing harassment "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive work environment."  __Maldonado-Cátala v. Mun. of Naranjito__, 876 F.3d 1, 10 (1st Cir. 2017) (citation and internal quotation marks omitted).  "The challenged conduct must be "both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and [the plaintiff] in fact did perceive it to be so."  __Id.__ (citation and internal quotation marks omitted).  According to the complaint, it appears that Ferrao was not aware of the disparaging messages or unauthorized video recording until after August 2022, when he was removed from his work post.  __See__ Docket No. 1 at pp. 4-5.  He thus fails to show that the conduct "alter[ed] the conditions of [his] employment and create[d] an abusive work environment."  __Maldonado-Cátala__, 876 F.3d at 10.

To summarize, Ferrao's disparate treatment claims based on the August 2022 removal from his work post and the December 2022 suspension are not subject to the Plan Injunction,[8] while his hostile work environment claim arose in part before the Effective Date and is thus barred by the Plan Injunction.

## B.    The Report and Recommendation (Fed.R.Civ.P. 12(b)(6))

The magistrate judge recommends that Ferrao's gender discrimination claim, retaliation claim, ADEA claim, and Puerto Rico law claims be dismissed.  (Docket No. 28 at pp. 11-22.)  The magistrate judge also recommends that Ferrao's claims based on alleged unlawful conduct occurring before December 6, 2022 be dismissed as untimely.  Id. at 6-11.  The magistrate judge recommended, however, that his Title VII religious discrimination claim be allowed to move forward at this stage, subject to the timeliness limitations mentioned above.  Id. at 13-16.  Both parties submitted various objections to the R&R.  (Docket No. 30; Docket No. 33.)

### 1.    Time-Barred Claims

Neither party objected to the R&R's recommendation that Ferrao's claims based on employment actions occurring before December 6, 2022 should be dismissed as time-barred.  Further

---

[8] As will be discussed infra, however, any claim based on the August 2022 removal from work post are dismissed as untimely.  See infra p. 14.

review of these claims has been waived.  <u>See</u> <u>Davet</u>, 973 F.2d
at 30-31.  The Court has nonetheless conducted a review of the
record and agrees with the magistrate judge's reasoning as to why
these claims should be dismissed.  Ferrao's EEOC complaint was not
filed until October 2, 2023.  All his claims based on unlawful
employment actions occurring before December 6, 2022 are therefore
time-barred.  To the extent he alleges a cause of action based on
continuing violations, this is also dismissed for the reasons
identified by the magistrate judge. <u>See</u> Docket No. 28 at pp. 7-11.

### 2.    Puerto Rico Law 100 and Law 115 Claims

Neither party objected to the R&R's recommendation
that Ferrao's causes of action under Puerto Rico Law 100 and Puerto
Rico Law 115 be dismissed.  Further review of these claims has
been waived.  <u>See</u> <u>Davet</u>, 973 F.2d at 30-31.  The Court has
nonetheless conducted a review of the record and agrees with the
magistrate judge's reasoning as to why these claims should be
dismissed. <u>See</u> Docket No. 28 at pp. 20-21.

### 3.    Title VII Gender Discrimination

Ferrao objects to the R&R's recommended dismissal
of his Title VII gender discrimination claim.  In his complaint,
he claims that he was subject to differential treatment and a
hostile work environment due to his gender.  His complaint,
however, fails to present any evidence that female employees were

treated more favorably than he was.  He alleges that the text
messages from principal Rosario to Ms. Morla-Ríos establish anti-
male animus, but none of these messages disparage or even reference
his gender.  See Docket No. 17-8 at p. 1 ("Ferrao's got me pissed
me off;" "Over my dead body will he return next year;" and "He's
going to screw up any time now and I'll be waiting for the moment").
In his objections to the R&R, Ferrao argues that the statements
should be read "in context," but nothing about the context (a chat
between two female staff members at the school) leads to an
implication that the comments reflect gender bias.

      Ferrao also points to the fact that the employees
at the school were, allegedly, "90% female."  See Docket No. 1 at
p. 7.  While reliance "in part on a statistical disparity to draw
an inference of pretext and/or discriminatory animus" can form a
valid argument, "such statistical evidence, without more, is not
enough to demonstrate the existence of an overarching policy or
practice of discrimination."  Smallwood v. Liberty Mut. Ins. Co.,
Civil No. 98-351-B, 2000 U.S. Dist. LEXIS 2624, at *30, 51 n. 26
(D.N.H. Mar. 6, 2000).  Without any positive evidence, Ferrao's
reference to the statistical disparity does not show that he was
subject to differential treatment based on gender.

Therefore, the Court will adopt the recommendation from the magistrate judge and dismiss Ferrao's Title VII gender discrimination claim.

### 4.   Title VII Retaliation

Ferrao next objects to the magistrate judge's recommendation that his Title VII retaliation claim be dismissed. The magistrate judge recommended dismissal after finding that Ferrao failed to demonstrate that he engaged in a protected activity. "The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (citation omitted). "An employee has engaged in activity protected by Title VII if [he] has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." Id. (internal quotation marks omitted).

Of the possible protected activities mentioned in the complaint, the magistrate judge found that only the December 13 protest fell within the 300-day timeliness window. The magistrate judge recommended dismissal because Ferrao's complaint does not mention whether the December 13 protest was taken to oppose statutorily prohibited discrimination, and that he thus failed to

demonstrate that it qualified as a protected activity.  It is the retaliatory action performed by the defendant, however, which must fall within the 300-day timeliness window, not the protected activity performed by the plaintiff.  <u>See</u> 42 U.S.C. § 2000e-5(e)(1) ("[A] charge shall be filed by or on behalf of the person aggrieved within three hundred days after *the alleged unlawful employment practice occurred* . . .") (emphasis added); <u>Moore v. Jackson Pub. Sch. Dist.</u>, No. 3:23-cv-3092, 2024 U.S. Dist. LEXIS 140053, at *14 (S.D. Miss. Aug. 6, 2024) (rejecting defendant's argument that both the protected activity and the retaliatory act needed to occur within the 180-day timeliness window in Mississippi, a non-deferral state).  Otherwise, employers could avoid liability for retaliation under Title VII by waiting 300 days before retaliating.

As acknowledged by the magistrate judge, Ferrao's claim based on the December 13 suspension is timely.  The protected activity in which he engaged does not also need to fall within the 300-day window.  Interpreted in the light most favorable to Ferrao, the complaint adequately alleges that the November 2022 protest concerned his Title VII rights.  <u>See</u> Docket No. 1 at p. 4 ("During November of 2022, plaintiff participated in the Teacher's Federation Manifestation at Chardon's Ave., . . . to denounce the Academy Director's selective prosecution of professors, including himself.").  And the December 13 notice specifically cites this

protest as a reason why he was being suspended.[9]  See Docket No. 17-
3 at pp. 4-7.  Therefore, the Court finds that Ferrao has presented
factual allegations on his retaliation claim which "raise a right
to relief above the speculative level."  Twombly, 550 U.S. at 555.
Accordingly, the Court will deny defendants' motion to dismiss on
the retaliation claim.

     **5.    ADEA Claim**

     Ferrao's final objection to the R&R is against the
recommendation that his ADEA claim be dismissed.  In Kimel v. Fla.
Bd. of Regents, 528 U.S. 62 (2000), the Supreme Court held that
ADEA does not abrogate the sovereign immunity provided to state
governments under the Eleventh Amendment.  528 U.S. at 82-92.  As
is well-established, the Commonwealth of Puerto Rico enjoys the
sovereign immunity protections of the Eleventh Amendment.  See,
e.g., Jusino-Mercado v. Puerto Rico, 214 F.3d 34, 39 (1st Cir.
2000) ("[W]e consistently have held that Puerto Rico's sovereign
immunity in federal courts parallels the states' Eleventh
Amendment immunity.").  Therefore, ADEA claims cannot be brought

---

[9] Ferrao does not specify whether his claim is a single-motive or a mixed-motive
claim.  For a single-motive claim, he must allege that the only reason he was
suspended was due to retaliation against his protected activity.  For a mixed
motive claim, he must allege that there may have been other reasons why he was
suspended, but ultimately would not have been suspended but for his protected
activity.  See Pineda v. Lopito, Ileana & Howie, Inc., No. 06-1397, 2009 U.S.
Dist. LEXIS 78721, at *6-7 (D.P.R. Sept. 1, 2009) (Cerezo, J.)  These claims
are based on "distinct statutory provisions with different standards of proof."
Id. at 6.  At this stage, his complaint is sufficient to avoid dismissal and
can proceed on either theory.

against Commonwealth government entities, such as the defendants in this case.

Ferrao argues that this conclusion is thrown into doubt by the Supreme Court's opinion in <u>Puerto Rico v. Sánchez-Valle</u>, 579 U.S. 59 (2016). In <u>Sánchez-Valle</u>, the Supreme Court held that Puerto Rico was not a "dual sovereign" with the federal government in the context of the Fifth Amendment double jeopardy clause. <u>Id.</u> at 77-78. Ferrao argues that this conclusion demonstrates that Puerto Rico Commonwealth entities do not possess Eleventh Amendment sovereign immunity. (Docket No. 30 at p. 6.) This argument, however, has been raised and rejected in this district several times already. <u>See, e.g.</u>, <u>Payne v. Álvarez-Ortiz</u>, 229 F. Supp. 3d 115, 116-17 (D.P.R. 2017) (Gelpí, J.); <u>Vélez-Acevedo v. Centro Comprensivo de Cáncer de la Universidad de P.R.</u>, Civ. No. 19-1560, 2021 U.S. Dist. LEXIS 124729, at *6-7 (D.P.R. Jul. 2, 2021) (Carreño-Coll, J.) The Court rejects it here as well. Eleventh Amendment sovereign immunity principles "have been extended to Puerto Rico long before the enactment of the Puerto Rican Federal Relations Act and the ratification of the Constitution of the Commonwealth of Puerto Rico in 1952." <u>Payne</u>, 229 F. Supp. 3d at 116. <u>Sánchez-Valle</u>, interpreting sovereignty in a completely different context, does not undercut the Commonwealth's sovereign immunity under the Eleventh Amendment.

Therefore, the Court adopts the reasoning in the R&R and dismisses Ferrao's ADEA claim.

### 6.    Title VII Religious Discrimination

Defendants bring a single objection to the R&R, arguing that the magistrate judge's recommendation preserving Ferrao's Title VII religious discrimination charge should not be adopted.

After reviewing the record, however, the Court adopts the conclusion of the R&R, finding that Ferrero's religious discrimination claim is sufficiently plausible to avoid a motion to dismiss.[10]   In their December 13 notice, defendants provided Ferrao with a variety of reasons why they were taking disciplinary action against him.  One of those reasons was an allegation from a student that Ferrao "liked to talk bad about the principal in class and said things about religion that you should not say, such as, for example, that there was more than one god, in addition to talking bad about churches."   (Docket No. 17-3 at p. 7.) Interpreted in the light most favorable to Ferrao, defendants' citation of the student's comment suffices to show that the

---

[10] See Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 24 (1st Cir. 2014) (holding that, to avoid a motion to dismiss, "plaintiffs need not plead facts in the complaint that establish a prima facie case under Title VII nor must they allege every fact necessary to win at trial . . . provided that, in sum, the allegations of the complaint make the claim as a whole at least plausible") (internal citation and quotation marks omitted).

December 13 suspension may have been motivated at least in part by Ferrao's religious beliefs.[11]

Defendants claim that Ferrao has not made out his religious discrimination claim because he (1) did not establish that anyone involved in the decision-making process was aware of his atheism, and (2) did not point to a practice of the employer with which his religious beliefs conflicted. The first objection is immediately undercut by the fact that the December 13 notice specifically cites his statements about religion as a reason for his suspension. As for the second objection, defendants confuse Ferrao's straightforward disparate treatment claim with a failure to accommodate claim. Ferrao does not argue that defendants failed to grant him a reasonable accommodation for his religious practice, but that they subjected him to disparate treatment (suspension) due to anti-atheist prejudice. This being the nature of his claim, he does not need to show that his beliefs conflicted with a specific policy maintained by his employer.

Ferrao has presented factual allegations on his religious discrimination claim which "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The Court

---

[11] See supra n. 9 on single-motive versus mixed-motive Title VII claims.

Civil No. 24-1079 (FAB)                                                    23

adopts the recommendation in the R&R and will deny defendants'
motion to dismiss on the religious discrimination claim.

**IV.  Conclusion**

       For the above reasons, the Court **GRANTS IN PART** and **DENIES IN
PART** the relief requested in defendants' Notice of Injunction.
(Docket No. 22.)    Specifically, (1) Ferrao's hostile work
environment claims are barred by the Plan Injunction, but (2) his
claims based on the August 2022 removal from work and December
2022 suspension are not barred (though any claim based on the
August 22 removal will be dismissed for untimeliness).   The Court
**ADOPTS IN PART** and **REJECTS IN PART** the R&R (Docket No. 28) and
**GRANTS IN PART** and **DENIES IN PART** defendant's motion to dismiss.
(Docket No. 10.)   The defendant's motion to dismiss is **DENIED** as
to Ferrao's Title VII retaliation claim and his Title VII religious
discrimination claim, and **GRANTED** as to his other Title VII claims,
his ADEA claim, and his claims under Puerto Rico Law 100 and Puerto
Rico Law 115.    Furthermore, any Title VII claim based on
defendants' conduct occurring before December 6, 2022 are
dismissed as untimely.

       **IT IS SO ORDERED.**

       San Juan, Puerto Rico, May 9, 2025.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE