IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GERARDO FERRAO-RIVERA,<br><br>**Plaintiff**,<br><br>v.<br><br>PUERTO RICO DEPARTMENT OF EDUCATION, *et al.*,<br><br>**Defendant.** | Civil No. 24-1079 (FAB) |

**MEMORANDUM AND ORDER**

BESOSA, Senior District Judge.

Before the Court is the Puerto Rico Department of Education's and the Commonwealth of Puerto Rico's (collectively, the "defendants") motion for partial reconsideration of the Opinion and Order issued on May 9, 2025 at Docket No. 34.  (Docket No. 38.)  Plaintiff Gerardo Ferrao-Rivera ("Ferrao" or "plaintiff") opposed defendants' motion.  (Docket No. 40.)  For the following reasons, the Court **DENIES** defendants' motion for partial reconsideration.  (Docket No. 34.)

I.  **Standard of Review**

"The Federal Rules of Civil Procedure do not explicitly recognize a motion for reconsideration."  Bautista Cayman Asset Co. v. Centro Cardiovascular de Manatí III, 731 F. Supp. 3d 264, 268 (D.P.R. 2024) (Besosa, J.) (internal quotation marks and

Civil No. 24-1079 (FAB)                                                                 2

alterations omitted). "Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend judgment under Fed. R. Civ. P. 59(e) if it seeks to change the order or judgment issued." Sánchez-Pérez v. Sánchez-González, 717 F. Supp. 2d 187, 194 (D.P.R. 2010) (Besosa, J.) "Rule 59(e) allows a party to direct the district court's attention to newly discovered material evidence or a manifest error of law or fact and enables the court to correct its own errors and thus avoid unnecessary appellate procedures." Id. (citing Aybar v. Crispín-Reyes, 118 F.3d 10, 16 (1st Cir. 1997)) (internal quotation marks omitted). Such a relief, however, is "granted sparingly." San Carlos Mortg., LLC v. Planet Home Lending, LLC, Civil No. 23-1395, 2024 U.S. Dist. LEXIS 243512, at *3 (D.P.R. Jun. 5, 2024) (Vélez-Rivé, J.) "[P]arties should not use [motions for reconsideration] to raise arguments which could, and should, have been made before judgment issued." Sánchez-Pérez, 717 F. Supp. 2d at 194 (citing Jorge Rivera Surillo & Co. v. Falconer Glass Indus., Inc., 37 F.3d 25, 29 (1st Cir. 1994)).

**II. Discussion**

Ferrao brought claims of hostile work environment, gender discrimination, religious discrimination, age discrimination, and retaliation against defendants, his former employers. (Docket No. 1.) His claims cite Title VII of the Civil Rights Act of 1964,

Civil No. 24-1079 (FAB)                                                              3

42 U.S.C. sections 2000-e, *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. sections 621, *et seq*. (the "ADEA"), and Puerto Rico Laws 100 (P.R. Laws Ann. tit. 29, sections 146 *et seq*.) and 115 (P.R. Laws Ann. tit. 29, sections 194 *et seq*.)  Id.  Defendants moved to dismiss Ferrao's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  (Docket No. 10.)  Defendants also filed a notice of injunction in which they argued that the plan entered pursuant to Title III of PROMESA in Case No. 17-3282, Docket No. 19784 (the "Plan") contained an injunction against civil liability which barred Ferrao's claims (the "Plan Injunction").

The Court found that the Plan Injunction barred Ferrao's hostile work environment claim but allowed his Title VII claims to proceed based on events occurring after March 15, 2022, the effective date of the Plan.  See Docket No. 34.  The Court granted defendants' motion to dismiss Ferrao's gender discrimination, age discrimination, and Puerto Rico law claims, but denied their motion to dismiss his Title VII religious discrimination and retaliation claims.  Id.

Defendants request reconsideration of the Court's conclusions with respect to the notice of injunction, Ferrao's Title VII religious discrimination claim, and his Title VII retaliation

Civil No. 24-1079 (FAB)                                                          4

claim.  For the following reasons, the Court is unpersuaded by defendants' arguments.

**A.    The Notice of Injunction**

Defendants' first request for reconsideration concerns the Court's handling of their notice of injunction.  (Docket No. 22.)  In interpreting the scope of the Plan Injunction and allowing Ferrao's post-effective date claims to proceed, defendants claim the Court impermissibly overstepped its jurisdiction.  Defendants base their argument on a similar one adopted by a sister court in Chaar-Padín v. Dep't of Educ. of P.R., Civil No. 24-1351, 2025 U.S. Dist. LEXIS 58846, at *3-5 (D.P.R. Mar. 26, 2025) (Méndez-Miró, J.)  In Chaar-Padín, the court found that the "Title III Court" – understood as the court sitting pursuant to section 308(a) of PROMESA, 48 U.S.C. section 2168(a), by designation of the Chief Justice of the United States - retained exclusive jurisdiction to interpret the scope of the Plan Injunction.  This finding was based on language in the Plan stating that the "Title III Court" retains exclusive jurisdiction "to resolve any cases, controversies, suits, disputes or other challenges of any kind that may arise in connection with the consummation, interpretation or enforcement of the Plan . . ." and "to determine any other matters that may arise in connection with or relate to the Plan."  Plan §§ 91.1(g), (j).

Civil No. 24-1079 (FAB)                                              5

The Court disagrees with defendants' interpretation of these jurisdictional provisions. The Plan defines the "Title III Court" as "[t]he United States District Court of the District of Puerto Rico or such other court having jurisdiction over the Title III Cases" – which includes this Court in addition to the court designated by the Chief Justice to oversee the Title III case. See Plan § 1.484; Niembro-Concha v. Zequeira-Diaz, Civ. No. 24-cv-1232, 2025 U.S. Dist. LEXIS 13213, at *4 n. 3 (D.P.R. Jan. 24, 2025) (Antongiorgi-Jordán, J.) (rejecting the government's argument that the district court lacked jurisdiction to interpret the scope of the Plan Injunction). The fact that numerous courts in this district have previously ruled on the temporal scope of the Plan Injunction in similar circumstances supports this understanding. See, e.g., Villalobos-Santana v. P.R. Police Bureau, Civil No. 21-1312, 2024 U.S. Dist. LEXIS 114703, at *9-12 (D.P.R. Jun. 5, 2024) (Delgado-Colón, J.) (finding that plaintiff's claims fell within the scope of the Plan Injunction); Vélez-Molina v. Schatz, Civil No. 20-1565, 2023 U.S. Dist. LEXIS 181227, at *2, *8-11 (D.P.R. Sept. 29, 2023) (López, M.J.) (same); Niembro-Concha, 2025 U.S. Dist. LEXIS 13213, at *5 (plaintiff's claims fell outside the scope of the Plan Injunction).

Additionally, the Court is not convinced that this case "arises in connection with" or is "related to" the Plan.

Civil No. 24-1079 (FAB) 6

Interpreting similar language in the statutory text of PROMESA, which itself mirrors the federal bankruptcy jurisdiction statute, Judge Swain noted that "[p]roceedings that "arise in" a Title III case are those which have no existence outside of the bankruptcy." Fin. Oversight & Mgmt. Bd. v. Pierluisi Urrutia, 650 B.R. 334, 348 (D.P.R. 2023) (Swain, J.); compare 48 U.S.C. § 2166(a)(2) (PROMESA jurisdiction statute), with 28 U.S.C. § 1334(b) (federal bankruptcy jurisdiction statute).  As for when a case is "related to" a Title III case, "[p]rior to confirmation of a plan of adjustment, proceedings that are 'related to' a Title III case are those which potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." Id. at 349 (internal quotation marks omitted).  Judge Swain noted, however, that "following the confirmation of a plan of reorganization . . . many courts apply a stricter test, assessing whether a proceeding bears a close nexus to the bankruptcy proceeding or the confirmed plan." Id. (internal quotation marks omitted).[1]

---

[1] Judge Swain does not explicitly apply the "close nexus" test adopted by other circuits, but notes that "the First Circuit . . . has endorsed the premise that once confirmation has occurred, fewer proceedings are actually related to the underlying bankruptcy case." Id. n. 12.

Civil No. 24-1079 (FAB)                                                      7

Reading the Plan's jurisdictional language in this context, this case does not arise in connection with or relate to the Plan. This is primarily a Title VII case. The only Plan-related element is whether Ferrao's claims need to be stayed pursuant to the Plan Injunction, a question that is more about when Ferrao's claims arose rather than involving extensive interpretation of the Plan itself. And both the underlying conduct and filing of the complaint occurred post-confirmation of the Plan, when "fewer proceedings are actually related to the underlying bankruptcy case." 650 B.R. at 349 n. 12. Therefore, the Court finds that its ruling on the scope of the Plan Injunction was not a manifest error of law. Accordingly, defendants' request for reconsideration with respect to the notice of injunction is **DENIED**.

**B.   Title VII Religious Discrimination**

Defendants' second argument for reconsideration concerns the Court's decision denying their motion to dismiss Ferrao's Title VII religious discrimination claim. Defendants argue that Ferrao's claim cannot survive dismissal under Rule 12(b)(6) because the December 13 notice of suspension contains a long list of reasons why he was being suspended, only one of which refers to religion. See Docket No. 38 at pp. 8-10.

Defendants, however, misunderstand Ferrao's burden at the motion to dismiss stage. Ferrao does not need to show that

Civil No. 24-1079 (FAB)                                                    8

religious discrimination was probable or more likely than not, or counter competing theories for the adverse employment action he suffered.  Ferrao simply needs to present evidence to demonstrate that his claim is at least plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("The plausibility standard is not akin to a probability requirement . . .") (internal quotation marks omitted); Rodríguez-Vives v. P.R. Firefighters Corps of P.R., 743 F.3d 278, 286 (1st Cir. 2014) ("The Corps plausibly suggests innocent explanations for much of the conduct about which Rodríguez-Vives complains, but it is not for the district court or us to weigh now the merits of these explanations against the merits of the explanations alleged by Rodríguez-Vives.  Rather, Rodríguez-Vives may proceed to discovery because she has alleged sufficient facts to make the non-innocent explanation of these facts plausible.")  The notice of suspension's citation of Ferrao's religious expression is evidence that the decision may have been "attributable [] in part to a forbidden bias." Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 36 n. 22 (1st Cir. 2020).  This "allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 23 (1st Cir. 2014) (citing Iqbal, 556 U.S. at 678).  Therefore, defendants' request for

reconsideration with respect to the Title VII religious discrimination claim is **DENIED**.

### C. Title VII Retaliation

Defendants' third argument for reconsideration concerns the Court's decision denying their motion to dismiss Ferrao's Title VII retaliation claim. Like their argument on the religious discrimination claim, defendants argue that the December 13 notice's citation of numerous grounds for Ferrao's suspension shows that his claim is insufficiently plausible to survive a motion to dismiss.

The Court rejects this argument. Ferrao has pleaded facts which move his retaliation claim from speculative to plausible. He engaged in a protest against the school's "selective prosecution of professors," and several weeks later, defendants suspended him. See Docket No. 1 at p. 4; Docket No. 17-3. The protest can be plausibly construed as a "protected activity" opposing statutorily prohibited discrimination. See Fantini v. Salem State Coll., 557 F.3d 22, 32 (1st Cir. 2009) (citation omitted). While Ferrao's burden of showing causality is modest at this stage, the close temporal relationship between the events renders causality plausible. See Garayalde-Rijos, 747 F.3d at 25 (noting that temporal proximity can be used as a factor to infer causation between a protected activity and retaliatory adverse

Civil No. 24-1079 (FAB)                                                      10

employment decision).  Indeed, Ferrao has more than just temporal proximity linking the two events; the notice specifically cites the protest as a reason for his suspension.  (Docket No. 17-3 at pp. 3-4.)  To survive a motion to dismiss, Ferrao does not need to demonstrate that his proffered explanation of events is more likely than the competing theories proffered by defendants.  See supra pp. 7-8.  Therefore, defendants' motion for reconsideration on the Title VII retaliation claim is **DENIED**.

**III. Conclusion**

For the above reasons, defendants' motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 18, 2025.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE